ORIGINAL

1  Mark J. Hattam (State Bar No. 173667)
   mhattam@allenmatkins.com
2  Michael J. Holmes (State Bar No. 199311)
   mholmes@allenmatkins.com
3  **ALLEN MATKINS LECK GAMBLE**
   **MALLORY & NATSIS LLP**
4  501 West Broadway, 15th Floor
   San Diego, California 92101
5  Telephone: (619) 233-1155
   Facsimile: (619) 233-1158
6
   Chad M. Hagan (*pro hac vice* pending)
7  chad.hagan@hnbllc.com
   Joseph H. Boyle (*pro hac vice* pending)
8  joe.boyle@hnbllc.com
   **HAGAN NOLL & BOYLE, LLC**
9  Two Memorial City Plaza
   820 Gessner, Suite 940
10 Houston, Texas 77024
   Telephone: (713) 343-0478
11 Facsimile: (713) 758-0146
12
   Attorneys for Plaintiffs
13

FILED
JAN 19 2012
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DISH NETWORK L.L.C., ECHOSTAR TECHNOLOGIES L.L.C., and NAGRASTAR LLC, <br><br> Plaintiffs, <br><br> v. <br><br> MILES DILLION and DOES 1- 10 d/b/a www.myfreeneeds.tv and www.myfreeneeds.com, <br><br> Defendants. | Case No. **12CV0157 BTM NLS** <br><br> **PLAINTIFFS' ORIGINAL COMPLAINT FOR:** <br><br> 1) Violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1201(a)(2); <br><br> 2) Violation of the Communications Act of 1934, as amended, 47 U.S.C. § 605(e)(4); <br><br> 3) Violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1201(a)(1) <br><br> 4) Violation of the Communications Act of 1934, as amended, 47 U.S.C. § 605(a); <br><br> 5) Violation of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2511(1)(a), 2520 |

Plaintiffs' Original Complaint                                   Case No. _____

Plaintiffs DISH Network L.L.C., EchoStar Technologies L.L.C., and NagraStar LLC (together, "DISH Network" or "Plaintiffs"), through their undersigned counsel, file their Original Complaint against Defendants Miles Dillion and Does 1- 10 d/b/a www.myfreeneeds.tv and www.myfreeneeds.com (collectively, "Defendants").

## JURISDICTION AND VENUE

1. This action is predicated upon violations of the Digital Millennium Copyright Act, 17 U.S.C. § 1201 *et seq.*, the Communications Act of 1934, as amended, 47 U.S.C. § 605 *et seq.*, and the Electronic Communications Privacy Act, 18 U.S.C. § 2511 *et seq.* Therefore, subject matter jurisdiction is proper in this Court under 28 U.S.C. §§ 1331 and 1338.

2. Venue is proper in this Court under 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events giving rise to this action occurred in this judicial district and 1400(a) because this case asserts claims relating to the protection of copyrighted materials.

3. This Court has personal jurisdiction over Defendants, who reside in or otherwise conduct business within the State of California.

4. Defendants directly target business activities toward residents in California and cause harm to Plaintiffs' businesses within this judicial district. Defendants target California residents by operating an English language Internet website operating under the domain www.myfreeneeds.tv and the domain www.myfreeneeds.com (together, the "MFN website"), which they use to offer and distribute pirate software to residents in California.

5. The Internet Corporation for Assigned Names and Numbers ("ICANN") accredited WHOIS domain registration records for www.myfreeneeds.com indicate that the registrant is located in San Diego, California. The ICANN accredited WHOIS domain registration records for www.myfreeneeds.tv indicate the domain name servers being used by Defendants are owned by Cloudflare, Inc., a corporation organized under the laws of California with headquarters in California. Defendants do business with Cloudflare, Inc., who provides content delivery network, website optimization, and/or security services to www.myfreeneeds.tv.

6. The MFN website is a highly interactive website. It has a dedicated "Contact Us" page which allows any registered member, including members in California and the United

States, to send a message to contact Defendants. It has a dedicated section titled, "Site Feedback and Requests" that allows members to post discussion threads and responses about how to improve the MFN website, which is viewable to Defendants. The MFN website has a dedicated "Live Chat" page that allows users to interact and communicate with other users currently logged on in a chat room in real time. The MFN website has a private message feature that allows members to send and receive personal and private messages to other members, including Defendants. Members interact with Defendants and each other using the MFN website with their ability to post and read content relating to satellite television piracy.

7. Defendants are committing tortious acts in California, are engaging in interstate commerce, and have caused Plaintiffs substantial injury in California through the operation of www.myfreeneeds.tv and www.myfreeneeds.com.

## PARTIES

8. Plaintiff DISH Network L.L.C. is a Colorado limited liability company with its principal place of business located at 9601 South Meridian Blvd., Englewood, Colorado 80112.

9. Plaintiff EchoStar Technologies L.L.C. is a Texas limited liability company with its principal place of business located at 90 Inverness Circle East, Englewood, Colorado 80112.

10. Plaintiff NagraStar LLC is a Colorado limited liability company with its principal place of business located at 90 Inverness Circle East, Englewood, Colorado 80112.

11. Defendant Miles Dillion is a natural personal residing in San Diego, California. Miles Dillion is the listed registrant (i.e. owner) of www.myfreeneeds.com.

12. Defendant Does 1 – 10 are unknown individuals and/or business entities.

13. Defendants conduct business throughout the United States, including the State of California and this judicial district, through the operation of their fully interactive website at www.myfreeneeds.tv and the domain www.myfreeneeds.com, which currently and automatically redirects visitors to www.myfreeneeds.tv.[1]  Defendants target California and the United States

---

[1] The www.myfreeneeeds.tv website was formerly addressed at www.myfreeneeds.com. Today, attempting to visit www.myfreeneeds.com will automatically redirect the visitor's web browser to www.myfreeneeds.tv.

and have offered and distributed piracy software files to residents within California and the United States through www.myfreeneeds.tv and www.myfreeneeds.com. The true names and capacities of Does 1 – 10 are currently unknown at this time for certain reasons including their identities are being concealed through the use of proxy domain registration services. DISH Network believes that information obtained in discovery will lead to the identification of each Does' true name.

## NATURE OF THE ACTION

14. Defendants are the registrants, owners, and/or operators of the domains, www.myfreeneeds.tv and www.myfreeneeds.com (together, the "MFN website"). The MFN website is a satellite television piracy website that provides, offers to the public, distributes, advertises, and markets piracy software files that allow consumers to circumvent DISH Network's security system and decrypt DISH Network programming without authorization and without payment of the required subscription fee.

15. Defendants' distribution of piracy software through the MFN website violates provisions of the Digital Millennium Copyright Act, 17 U.S.C. § 1201, the Communications Act, 47 U.S.C. § 605, and the Electronic Communications Privacy Act, 18 U.S.C. §§ 2511, 2520.

## DISH NETWORK SATELLITE TELEVISION PROGRAMMING

16. DISH Network L.L.C. is a multi-channel video provider that delivers video, audio, and data services to customers throughout the United States, Puerto Rico, and the U.S. Virgin Islands via a direct broadcast satellite system.

17. DISH Network uses high-powered satellites to broadcast, among other things, movies, sports, and general entertainment services to consumers who have been authorized to receive such services after payment of a subscription fee, or in the case of a pay-per-view movie or event the purchase price.

18. DISH Network contracts for and purchases the distribution rights for most of the programming broadcast on the DISH Network platform from providers such as network affiliates, motion picture distributors, pay and specialty broadcasters, cable networks, sports leagues, and other holders of programming rights.

19. The works broadcast on the DISH Network platform are copyrighted. DISH Network has the authority of the copyright holders to protect these works from unauthorized reception and viewing.

20. DISH Network programming is digitized, compressed, and scrambled prior to being transmitted to multiple satellites located in geo-synchronous orbit above Earth. The satellites, which have relatively fixed footprints covering the United States and parts of Canada, Mexico, and the Caribbean, relay the encrypted signal back down to Earth where it can be received by DISH Network subscribers that have the necessary equipment.

21. A DISH Network satellite television system consists of a compatible dish antenna, receiver, smart card which in some instances is internalized in the receiver, television, and cabling to connect the various components. EchoStar Technologies L.L.C. provides receivers, dish antenna, and other digital equipment for the DISH Network system. Smart cards and other proprietary security technologies that form a conditional access system are supplied by NagraStar LLC.

22. The NagraStar conditional access system performs two interrelated functions: first, subscriber rights management, which allows DISH Network to "turn on" and "turn off" programming a customer has ordered, cancelled, or changed; and second, scrambling, which prevents unauthorized viewing of DISH Network programming.

23. An integral component of the NagraStar conditional access system is a smart card containing a secure embedded microprocessor that functions as a security computer. The microprocessor contains a ROM segment of memory that provides instructions and commands to the smart card in the everyday operation of the NagraStar security system. The ROM segment reads from data stored within the microprocessor's EEPROM to perform its calculation and operation functions. The EEPROM segment also stores a special kind of data called decryption keys.

24. To put the NagraStar smart card in context, the EchoStar Technologies receiver processes an incoming satellite signal by locating an encrypted part of the transmission known as the entitlement control message, and then forwards that message to the smart card. Provided the

subscriber is tuned to a channel he is authorized to watch, the smart card uses its decryption keys to unlock the message, uncovering a control word. The control word is sent back to the receiver in order to decrypt the satellite signal.

25.     Together, the EchoStar Technologies receiver and NagraStar smart card convert DISH Network's encrypted satellite broadcasts into viewable programming that can be displayed on the attached television of a DISH Network subscriber. Each receiver and smart card is assigned a unique serial number that is used by DISH Network when activating the equipment, and to ensure the equipment only decrypts programming that the customer is authorized to receive as part of his subscription package and pay-per-view purchases.

## PIRACY OF DISH NETWORK PROGRAMMING

26.     Satellite television pirates developed a way to circumvent DISH Network's security system and intercept DISH Network programming using unauthorized receivers. This form of piracy is accomplished by loading software that contains the proprietary data and keys to DISH Network's security system ("piracy software" or "pirate software") onto circuit chips within the unauthorized receiver, so as to mimic a legitimate NagraStar smart card. The process of loading piracy software is referred to as "flashing" the unauthorized receiver and can be completed by even a layperson in minutes. Piracy software is freely available on a number of websites including www.myfreeneeds.tv and www.myfreeneeds.com.

27.     Satellite piracy has been historically a tedious endeavor because the unauthorized receiving technology needed to be manually and routinely updated to account for and overcome changes to DISH Network's security system, namely electronic counter-measures (or "ECMs") transmitted in the satellite data stream. The countermeasures have multiple effects, one being to change the decryption keys required to access proprietary DISH Network control words.

28.     One form of satellite piracy is known as "control word sharing," also called "internet key sharing" or more simply "IKS." IKS eliminates the need to manually update piracy software in the unauthorized receiver.

29.     IKS involves the use of an unauthorized receiver, piracy software, and an internet connection. Piracy software is loaded onto the receiver and the end-user connects the receiver to

the internet via a built-in Ethernet port or add-on dongle. The internet connection serves two piracy-related purposes: first, it automatically updates piracy software on the receiver when the user responds "yes" to an on-screen menu prompt; and second, the internet connection contacts a computer server which in turn provides the necessary codes or control words needed to decrypt or descramble the encrypted DISH Network programming.

30. The pirate computer server, called an "IKS server," is typically assembled by combining several DISH Network or EchoStar satellite receivers and embedded NagraStar smart cards and connecting those receivers to a computer server. The person operating the server will typically activate a single paid subscription for each of the EchoStar satellite receivers and, utilizing pirate software and other technology, will monitor the receivers and extract the secret descrambling codes or "control words" from these paid accounts. The pirate computer server will then send these codes out over the internet to end-users whose computers and receivers are programmed to receive the descrambling control words and will utilize those control words to descramble DISH Network programming without a separate, authorized subscription or payment of a subscription fee to DISH Network.

31. Because IKS is based on the trafficking of control words illegally obtained from legitimate DISH Network receiving equipment, this method of satellite piracy remains effective even after Plaintiffs' transition to "Nagra 3" or "N3," a third generation security technology recently introduced by NagraStar.

32. Satellite television piracy causes substantial, irreparable harm to Plaintiffs. DISH Network, EchoStar Technologies, and NagraStar invest millions of dollars each year in the security measures that protect DISH Network programming. The distribution of devices, including pirate software files, that circumvent these measures, however, eradicates the investment in the technology and undermines the values that the technological measures are meant to preserve, chief among them the ability to control access to the copyrighted programming broadcast on the DISH Network platform, which is lost when pirate software is placed in the hands of satellite pirates. Pirate software files are capable of giving end-users the ability to

receive, intercept, decrypt, and view unlimited DISH Network programming without paying for a subscription and without authorization, and allow end-users to engage in IKS piracy.

33. Equally serious is the damage to the reputation and goodwill of DISH Network EchoStar Technologies, and Nagrastar. Their business reputations are built on and depend on the delivery of secured content. Piracy harms those reputations and interferes with the contractual and prospective business relationships of DISH Network, EchoStar Technologies, and NagraStar, including relations with programming providers and customers for set-top boxes and conditional access system solutions. These losses are impossible to ascertain at this time.

34. Satellite piracy directly and negatively impacts the revenues earned by DISH Network, EchoStar Technologies, and NagraStar. The injury to DISH Network includes lost programming revenues that would customarily be paid by a legitimate subscriber. DISH Network's average monthly revenue per authorized subscriber is approximately $70 each month. Individuals using pirate software, however, have unlimited access to DISH Network programming, including premium and pay-per-view channels, the value of which far exceeds that built in the average subscriber calculation. Similarly, piracy deprives NagraStar and EchoStar Technologies of revenues that would ordinarily be gained from the sale of receivers, smart cards, and other technology to legitimate subscribers.

### DEFENDANTS' WRONGFUL CONDUCT[2]

35. Defendants are the registrants, owners, and/or operators of the domains, www.myfreeneeds.tv and www.myfreeneeds.com, both of which can be accessed by any resident of California or the United States.

36. The MFN website focuses on satellite television piracy and the piracy of DISH Network Programming.

---

[2] The allegations made by DISH Network L.L.C., EchoStar Technologies L.L.C., and NagraStar LLC concerning the whereabouts and wrongful conduct of Defendants are based on the investigation completed to date, and with the reasonable belief that further investigation and discovery in this action will lead to additional factual support. Therefore, DISH Network reserves the right to supplement or amend its claims and the basis for those claims, with leave of court if necessary, as additional investigation and discovery is conducted.

37. There are currently over 40,000 registered members of the MFN website and membership increases on a daily basis.

38. Members of the MFN website, including those residing in California and the United States, can download piracy software used for DISH Network piracy.

39. The MFN website is written in the English language and has metadata using keywords written in the English language such as "Dish" and "downloads."

40. Defendants are involved in and/or are responsible for manufacturing, developing, distributing, promoting, using, and/or allowing members to download pirate software used for DISH Network piracy.

41. Defendants have participated in and are responsible for the distribution of numerous versions of pirate software using the MFN website.

42. Defendants' pirate software is primarily designed to allow users to circumvent DISH Network's security system, a technological measure that effectively controls access to, copying, and distribution of copyrighted works.

43. There is no commercially significant or legitimate use for the pirate software offered and distributed by Defendants on the MFN website other than to circumvent DISH Network's security system.

44. Defendants and/or others acting in concert with them, market, promote, and advertise pirate software available on the MFN website for use in the circumvention of DISH Network's security system and for DISH Network piracy.

45. Using pirate software made available through the MFN website, Defendants and those acting on their behalf or in concert with them, circumvent DISH Network's security system to receive, intercept, decrypt, and use DISH Network's satellite signals and copyrighted satellite television programming in order to view such programming without authorization or assists others to do same.

46. The circumvention of DISH Network's security system occurs without the permission, authorization, or consent of DISH Network or any owner of copyrighted programming broadcast on the DISH Network platform.

# CLAIMS FOR RELIEF

## COUNT I

### Offering to the Public and Trafficking in Circumvention Devices and Services in Violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1201(a)(2)

47. DISH Network repeats and realleges the allegations in paragraphs 1-46.

48. Defendants were and are engaged in manufacturing, importing, advertising, offering to the public, providing, and otherwise trafficking in pirate software using the MFN website in violation of 17 U.S.C. § 1201(a)(2).

49. Defendants' pirate software is primarily designed and produced for the purpose of circumventing the DISH Network security system; has no commercially significant purpose or use other than to circumvent the DISH Network security system; and is marketed by Defendants and others known to be acting in concert for use in circumventing the DISH Network security system.

50. The DISH Network security system is a technological measure that effectively controls access to, copying, and distribution of copyrighted works.

51. Defendants' actions that constitute violations of 17 U.S.C. § 1201(a)(2) were and are performed without the permission, authorization, or consent of DISH Network or any owner of copyrighted programming broadcast on the DISH Network platform.

52. Defendants violated 17 U.S.C. § 1201(a)(2) willfully and for purposes of commercial advantage and private financial gain.

53. Defendants knew or should have known their actions were and are illegal and prohibited. Such violations have and will continue to cause damage to DISH Network in an amount to be proven at trial. Unless restrained and enjoined by the Court, Defendants will continue to violate 17 U.S.C. § 1201(a)(2).

## COUNT II

### Distributing Signal Theft Devices in Violation of the Communications Act, 47 U.S.C. § 605(e)(4)

54. DISH Network repeats and realleges the allegations in paragraphs 1-46

55. Defendants were and are engaged in manufacturing, assembling, modifying, importing, exporting, selling, or otherwise distributing pirate software using the MFN website in violation of 47 U.S.C. § 605(e)(4).

56. Defendants' pirate software is primarily of assistance in the unauthorized decryption of DISH Network's satellite transmissions of television programming.

57. Defendants' actions that constitute violations of 47 U.S.C. § 605(e)(4) were and are performed without the permission, authorization, or consent of DISH Network or any owner of copyrighted programming broadcast on the DISH Network platform.

58. Defendants violated 47 U.S.C. § 605(e)(4) willfully and for purposes of commercial advantage and private financial gain.

59. Defendants intended pirate software made available through the MFN website to be used in the unauthorized decryption of DISH Network's satellite transmissions of television programming, or knew or should have known the pirate software was and is primarily used for this purpose, and therefore is illegal and prohibited. Such violations have and will continue to cause damage to DISH Network in an amount to be proven at trial. Unless restrained and enjoined by the Court, Defendants will continue to violate 47 U.S.C. § 605(e)(4).

## COUNT III

**Circumventing Access Control Measures in Violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1201(a)(1)**

60. DISH Network repeats and realleges the allegations in paragraphs 1-46.

61. Defendants were and are circumventing, or are responsible for others circumventing, the DISH Network security system by using and distributing pirate software using the MFN website in violation of 17 U.S.C. § 1201(a)(1).

62. Defendants test and use pirate software to circumvent DISH Network's security system. Defendants' distribution of pirate software through the MFN website assists others to circumvent the DISH Network security system.

63. The DISH Network security system is a technological measure that effectively controls access to, copying, and distribution of copyrighted works.

64. Defendants' actions that constitute violations of 17 U.S.C. § 1201(a)(1) were and are performed without the permission, authorization, or consent of DISH Network or any owner of copyrighted programming broadcast on the DISH Network platform.

65. Defendants violated 17 U.S.C. § 1201(a)(1) willfully and for purposes of commercial advantage and private financial gain.

66. Defendants knew or should have known their actions were and are illegal and prohibited. Such violations have and will continue to cause damage to DISH Network in an amount to be proven at trial. Unless restrained and enjoined by the Court, Defendants will continue to violate 17 U.S.C. § 1201(a)(1).

## COUNT IV

### Receiving and Assisting Others in Receiving Satellite Signals Without Authorization in Violation of the Communications Act, 47 U.S.C. § 605(a)

67. DISH Network repeats and realleges the allegations in paragraphs 1-46.

68. Defendants were and are receiving, or assisting others in receiving, DISH Network's satellite transmissions of television programming for their benefit or the benefit of others without authorization by using and distributing pirate software using the MFN website in violation of 47 U.S.C. § 605(a).

69. Defendants' distribution of pirate software through the MFN website assists others to receive DISH Network programming without authorization by providing pirate software through the MFN website to persons to test and report on its piracy capabilities.

70. Defendants' actions that constitute violations of 47 U.S.C. § 605(a) were and are performed without the permission, authorization, or consent of DISH Network or any owner of copyrighted programming broadcast on the DISH Network platform.

71. Defendants violated 47 U.S.C. § 605(a) willfully and for purposes of commercial advantage and private financial gain.

72. Defendants knew or should have known their actions were and are illegal and prohibited. Such violations have and will continue to cause damage to DISH Network in an

amount to be proven at trial. Unless restrained and enjoined by the Court, Defendants will continue to violate 47 U.S.C. § 605(a).

## COUNT V

**Intercepting and Procuring Others to Intercept Satellite Signals in Violation of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2511(1)(a), 2520**

73. DISH Network repeats and realleges the allegations in paragraphs 1-46.

74. Defendants were and are intercepting and procuring others to intercept DISH Network's satellite transmissions of television programming by using and distributing pirate software using the MFN website in violation of 18 U.S.C. §§ 2511(1)(a) and 2520.

75. Defendants use pirate software to intercept DISH Network's satellite transmissions of television programming. Defendants' distribution of pirate software through the MFN website causes others to intercept DISH Network programming.

76. Defendants also procure others to intercept DISH Network's satellite transmissions by providing pirate software through the MFN website to persons to test and report on its piracy capabilities.

77. Defendants' actions that constitute violations of 18 U.S.C. §§ 2511(1)(a) and 2520 were and are performed without the permission, authorization, or consent of DISH Network or any owner of copyrighted programming broadcast on the DISH Network platform.

78. Defendants violated 18 U.S.C. §§ 2511(1)(a) and 2520 for tortious and illegal purposes, and for commercial advantage and private financial gain.

79. Defendants' interception and procurement of others to intercept was intentional, and therefore is illegal and prohibited. Such violations have and will continue to cause damage to DISH Network in an amount to be proven at trial. Unless restrained and enjoined by the Court, Defendants will continue to violate 18 U.S.C. §§ 2511(1)(a) and 2520.

## PRAYER FOR RELIEF

WHEREFORE, DISH Network L.L.C., EchoStar Technologies L.L.C., and NagraStar LLC seek judgment against Defendants as follows:

A.  For a grant of permanent injunctive relief restraining and enjoining Defendants, and their employees, agents, representatives, attorneys, and all persons acting or claiming to act on their behalf or under their direction or authority, and all persons acting in concert or in participation with them, from:

(1)  manufacturing, importing, offering to the public, providing, or otherwise trafficking in pirate software, technology, product, service, device, component, or part thereof, that:

(a)  is primarily designed or produced for circumventing the DISH Network security system or any other technological measure adopted by DISH Network that controls access to, copying, or distribution of copyrighted works on the DISH Network platform;

(b)  has only a limited commercially significant purpose or use other than to circumvent the DISH Network security system or any other technological measure adopted by DISH Network that controls access to, copying, or distribution of copyrighted works on the DISH Network platform; or

(c)  is marketed for use in circumventing DISH Network's security system or any other technological measure adopted by DISH Network that controls access to, copying, or distribution of copyrighted works on the DISH Network platform;

(2)  manufacturing, assembling, modifying, importing, exporting, selling, or otherwise distributing pirate software or any other device or equipment, knowing or having reason to know that such device or equipment is primarily of assistance in the unauthorized decryption of direct-to-home satellite services;

(3)  receiving or assisting others in receiving without authorization, or otherwise intercepting or procuring others to intercept, DISH Network's satellite transmissions of television programming;

B.  For an order impounding all pirate software and other technologies, products, services, devices, components, or parts thereof in the custody or control of Defendants that the Court has reasonable cause to believe were involved in a violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1201 or the Communications Act, 47 U.S.C. § 605;

C.  For an order directing Defendants to preserve all records, in any form including electronic form, that evidence, refer, or relate to pirate software or other services and devices used in satellite television piracy, including any manufacturers, exporters, importers, dealers, or purchasers of such services and devices, or persons involved in operating an IKS server or receiving control words from same;

D.  Award DISH Network the greater of its actual damages together with any profits made by Defendants that are attributable to the violations alleged herein, or statutory damages in the amount of up to $2,500 for each violation of 17 U.S.C. § 1201(a)(1), (2), under 17 U.S.C. §§ 1203(c)(2) and 1203(c)(3)(A);

E.  Award DISH Network the greater of its actual damages together with any profits made by Defendants that are attributable to the violations alleged herein, or statutory damages in the amount of up to $100,000 for each violation of 47 U.S.C. § 605(e)(4), under 47 U.S.C. § 605(e)(3)(C)(i);

F.  Award DISH Network the greater of its actual damages together with any profits made by Defendants that are attributable to the violations alleged herein, or statutory damages in the amount of up to $10,000 for each violation of 47 U.S.C. § 605(a), under 47 U.S.C. § 605(e)(3)(C)(i). DISH Network seeks to increase that amount up to $110,000 for each violation, at the Court's discretion, in accordance with 47 U.S.C. § 605(e)(3)(C)(ii);

G.  Award DISH Network the greater of its actual damages together with any profits made by Defendants that are attributable to the violations alleged herein, or statutory damages in the amount of $100 per day for each violation of 18 U.S.C. § 2511(1)(a) or $10,000, under 18 U.S.C. § 2520(c)(2);

H.  Award DISH Network punitive damages under 18 U.S.C. § 2520(b)(2);

I.  For an award of DISH Network's costs, reasonable attorneys' fees, and investigative expenses under 17 U.S.C. § 1203(b)(4)-(5), 47 U.S.C. § 605(e)(3)(B)(iii), and 18 U.S.C. § 2520(b)(3);

J.  For a full and accurate accounting of all profits and other benefits received by Defendants as a result of the wrongful conduct described herein;

K.      For pre- and post-judgment interest on all damages, from the earliest date permitted by law at the maximum rate permitted by law;

L.      For such additional relief as the Court deems just and equitable.

DATED: January 19, 2012         By: _____
Mark J. Hattam (State Bar No. 173667)
mhattam@allenmatkins.com
Michael J. Holmes (State Bar No. 199311)
mholmes@allenmatkins.com
**ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP**
501 West Broadway, 15th Floor
San Diego, California 92101
Telephone: (619) 233-1155
Facsimile: (619) 233-1158

Chad M. Hagan (*pro hac vice* pending)
chad.hagan@hnbllc.com
Joseph H. Boyle (*pro hac vice* pending)
joe.boyle@hnbllc.com
**HAGAN NOLL & BOYLE LLC**
820 Gessner, Suite 940
Houston, Texas 77024
Telephone: (713) 343-0478
Facsimile: (713) 758-0146

Attorneys for Plaintiffs

JS 44 (Rev. 09/11)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
DISH NETWORK L.L.C., ECHOSTAR TECHNOLOGIES L.L.C., and NAGRASTAR LLC

(b) County of Residence of First Listed Plaintiff: Arapahoe County, CO
*(EXCEPT IN U.S. PLAINTIFF CASES)*

ORIGINAL

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
Mark J. Hattam (State Bar No. 173667)
Micheal J. Holmes (State Bar No. 199311)
ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP
501 West Broadway, 15th Floor
San Diego, CA 92101-3541

## DEFENDANTS
MILES DILLION and DOES 1-10 d/b/a www.myfreeneeds.tv and www.myfreeneeds.com

County of Residence of First Listed Defendant: _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

**12CV0157 BTM NLS**

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*
- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane / [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 400 State Reapportionment |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability / [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability |  |  | [ ] 410 Antitrust |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander |  | **PROPERTY RIGHTS** | [ ] 430 Banks and Banking |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability / [ ] 368 Asbestos Personal Injury Product Liability |  | [ ] 820 Copyrights | [ ] 450 Commerce |
| [ ] 151 Medicare Act | [ ] 340 Marine |  | [ ] 830 Patent | [ ] 460 Deportation |
| [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans) | [ ] 345 Marine Product Liability / **PERSONAL PROPERTY** |  | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle / [ ] 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | [ ] 480 Consumer Credit |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability / [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | [ ] 861 HIA (1395ff) | [X] 490 Cable/Sat TV |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury / [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Mgmt. Relations | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Med. Malpractice / [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| [ ] 196 Franchise |  | [ ] 751 Family and Medical Leave Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
|  |  | [ ] 790 Other Labor Litigation | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
|  |  | [ ] 791 Empl. Ret. Inc. Security Act |  | [ ] 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** |  | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights / [ ] 510 Motions to Vacate Sentence |  | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 220 Foreclosure | [ ] 441 Voting / **Habeas Corpus:** |  | [ ] 871 IRS—Third Party 26 USC 7609 |  |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment / [ ] 530 General |  |  | [ ] 950 Constitutionality of State Statutes |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations / [ ] 535 Death Penalty | **IMMIGRATION** |  |  |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment / [ ] 540 Mandamus & Other | [ ] 462 Naturalization Application |  |  |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other / [ ] 550 Civil Rights | [ ] 463 Habeas Corpus - Alien Detainee (Prisoner Petition) |  |  |
|  | [ ] 448 Education / [ ] 555 Prison Condition | [ ] 465 Other Immigration Actions |  |  |
|  | / [ ] 560 Civil Detainee - Conditions of Confinement |  |  |  |

## V. ORIGIN *(Place an "X" in One Box Only)*
- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district *(specify)*
- [ ] 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*: 28 U.S.C. §§ 1331, 1338; 17 U.S.C. §§ 1201(a)(1), 1201(a)(2); 47 U.S.C. §§ 605(a), 605(e)(4); 18 U.S.C. §§ 2511(1)(a), 2520

Brief description of cause:
circumvention of access controls to copyrighted works; reception, interception, and decryption of satellite signals

## VII. REQUESTED IN COMPLAINT:
[ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [X] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*
JUDGE _____ DOCKET NUMBER _____

DATE: January 19, 2012
SIGNATURE OF ATTORNEY OF RECORD: *[signature]* — Michael J. Holmes, Attorneys for Plaintiffs

**FOR OFFICE USE ONLY**
RECEIPT # 345563 AMOUNT $350— APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____
MB 01/19/12

```
Court Name: USDC California Southern
Division: 3
Receipt Number: CAS034563
Cashier ID: mbain
Transaction Date: 01/19/2012
Payer Name: CALEXPRESS
----------------------------------
CIVIL FILING FEE
 For: DISH NETWORK V DILLION
 Case/Party: D-CAS-3-12-CV-000157-001
 Amount:       $350.00
----------------------------------
CHECK
 Check/Money Order Num: 71291
 Amt Tendered:  $350.00
----------------------------------
Total Due:       $350.00
Total Tendered:  $350.00
Change Amt:      $0.00


There will be a fee of $53.00
charged for any returned check.
```