# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DISH NETWORK LLC, ECHOSTAR TECHNOLOGIES LLC, and NAGRASTAR LLC,<br><br>Plaintiffs,<br>v.<br>MILES DILLION and DOES 1-10 d/b/a www.myfreeneeds.tv and www.myfreeneeds.com,<br><br>Defendants. | Case No. 12cv157 BTM(NLS)<br><br>**ORDER GRANTING PRELIMINARY INJUNCTION** |

In an order filed on January 23, 2012, the Court granted Plaintiff's ex parte motion for a temporary restraining order, seizure, and impoundment, and ordered Defendants to show cause why a preliminary injunction should not be entered. The Court held a hearing on the OSC on February 1, 2012. Defendants did not file any opposition papers and did not appear. For the reasons discussed below, the Court **GRANTS** Plaintiffs' motion for preliminary injunction.

## I. FACTS

DISH Network LLC ("DISH") provides copyrighted satellite television programming to approximately 14 million subscribers throughout the United States. (Duval Decl. ¶¶ 4-5.) To limit its programming to authorized subscribers, DISH encrypts its satellite signal, and

authorized subscribers are provided with the necessary equipment (dish antenna, receiver, and smart card) to decrypt the signal and view the programming. (Id. at ¶¶ 6-7.) Defendant EchoStar Technologies ("EchoStar") provides receivers and dish antenna for the DISH Network system. (Id. at ¶ 7.) Smart cards and other propriety security technologies are supplied by NagraStar LLC ("Nagrastar"). (Id.)

The receiver and smart card work together to convert DISH's encrypted satellite signal into viewable programming that can be displayed on the attached TV of an authorized DISH subscriber. (Id. at 10.) The receiver processes an incoming DISH satellite signal by locating an encrypted part of the transmission (the "entitlement control message") and forwarding it to the smart card. (Id.) The smart card, which stores data called decryption keys, unlocks the message by uncovering a control word and transmits the control word back to the receiver. Id.

Satellite television pirates have developed methods for circumventing DISH's security system and intercepting DISH programming. One method involves loading software containing the proprietary data and keys to DISH's security system ("piracy software") onto circuit chips within unauthorized receivers, mimicking legitimate NagraStar smart cards. (Id. at 11.) Another method involves "control word sharing" or "internet key sharing": a pirate computer server sends descrambling codes (often extracted from a paid subscription) to internet end-users who have downloaded piracy software onto their receivers so that their receivers are programmed to receive the descrambling control words and utilize the control words to descramble DISH programming. (Id. at ¶¶ 13-15.)

The domain www.myfreeneeds.com was created on April 8, 2010. (Gee Decl. ¶ 7.) Prior to the issuance of the TRO, this domain automatically redirected visitors to www.myfreeneeds.tv, a subsequently created domain. (Id. at ¶ 13.) WHOIS historical records identify the registrant of www.myfreeneeds.com as "Miles Dillion." (Id. at ¶ 8.) The registrants of www.myfreeneeds.tv are not currently known because the registrants used a proxy service, PrivacyProtect.org, which conceals their identities. (Id. at ¶ 10.) (This Order refers to both domains as the "MFN website.")

The MFN website has over 40,000 registered members. (Gee Decl. ¶ 18.) Based on an investigation by Nagrastar, it was determined that all 120 different files made available for download through the MFN domains are capable of stealing unlimited amounts of DISH satellite television programming. (McMullen Decl. ¶ 22.) Each of the 120 different files are pirate software files used to enable unauthorized devices to intercept, receive, and decrypt DISH satellite television programming by circumventing DISH's security system. (Id.) A detailed description of the different software files is set forth in ¶¶ 23-142 of the McMullen Declaration.

On January 23, 2012, the Court granted Plaintiff's ex parte motion for temporary restraining order, seizure, and impoundment. On January 27, 2012, Verisign transferred myfreeneeds.com and myfreeneeds.tv to GoDaddy and GoDaddy put them on lock down status and took them offline. (Hagan Decl. dated Jan. 31, 2012, ¶ 20.) On January 28, 2012, the webmaster@myfreeneeds.net sent an email to all MFN members, explaining that DISH had seized their domains but that they were back "stronger then [sic] ever." (Ex. 10 to Hagan Decl.) The email stated, "No need to be afraid we at this point still the most secure forum on the web as they did NOT get access to the data or server and never will." On January 29, Mr. Hagan confirmed that Defendants had relaunched their content on myfreeneeds.net. (Id. at ¶ 22.) The structure and content of the .net website is virtually identical to the .com and .tv websites. (Id.) On the .net website an administrator, "Mr Sonicview," explained that although the myfreeneeds.com and myfreeneeds.tv domains were being "redirected" to DISH, DISH did not have access to their servers. (Ex. 12 to Hagan Decl.) The administrator stated, "Do not be supprized [sic] if you see us change the domain out of the country once again very fast." The administrator also stated, "Dish is pathetic if they think they can stop the freedom of speech."

///
///
///
///

## II. STANDARD

A plaintiff seeking a preliminary injunction or temporary restraining order must establish that (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. Winter v. Natural Resources Defense Council, 555 U.S. 7, 20 (2008).

The Ninth Circuit has held that the "sliding scale" approach to preliminary injunctions survives Winter when applied as part of the four-element Winter test. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011). In other words, "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." Id. at 1135.

## III. DISCUSSION

The Court is convinced that Plaintiffs are entitled to a preliminary injunction. As discussed below, Plaintiffs have established that they are likely to succeed on the merits, they are likely to suffer irreparable harm in the absence of preliminary relief, the balance of equities tip in their favor, and an injunction is in the public interest.

A. Merits of Plaintiff's Legal Claims

Based on the evidence before the Court, it appears that Plaintiffs are likely to succeed on the merits of all of their legal claims.

  1. Digital Millennium Copyright Act ("DMCA")

Plaintiffs' first cause of action alleges that Defendants violated 17 U.S.C. § 1201(a)(2). Plaintiff's third cause of action alleges that Defendants violated 17 U.S.C. § 1201(a)(1).

Section 1201(a)(1)(A) prohibits the circumvention of technology controlling access to copyrighted works. The statute provides: "No person shall circumvent a technological

measure that effectively controls access to a work protected under this title."

Section 1201(a)(2) provides, in relevant part: "No person shall manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof, that . . . is primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to a work protected under this title."

Plaintiffs have shown that Defendants provided their members with software that enables them to circumvent DISH's security measures and intercept copyrighted programming. Therefore, Defendants are likely to succeed on their claims under Section 1201(a)(1)(A) as well as Section 1201(a)(2).  See Dish Network,LLC v. Satfta, 2011 WL 856268, at * 4 (N.D. Cal. March 9, 2011); Dish Network LLC v. Whitcomb, 2011 WL 1559825, at * 3 (S.D. Cal. Apr. 25, 2011).

2. Communications Act of 1934

Plaintiffs' second and fourth causes of action allege that Defendants violated the Communications Act of 1934, as amended, 47 U.S.C. §§ 605(a) and (e)(4).

Section 605(a) provides in relevant part: "No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto."

Section 605(e)(4) provides: "Any person who manufactures, assembles, modifies, imports, exports, sells, or distributes any electronic, mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming, or direct-to-home satellite services, or is intended for any other activity prohibited by subsection (a) of this section, shall be fined not more than $500,000 for each violation, or imprisoned for not more than 5 years for each violation, or both."

Satellite transmissions intended for fee-paying subscribers fall within the definition of

1  radio communications under the Act.  See Cable/Home Commc'n Corp. v. Network Prods, Inc., 902 F.2d 829, 848 (11th Cir. 1990); DirecTV v. Hendrix, 2005 WL 757562, at *3 (N.D. Cal. Apr. 1, 2005).   Plaintiffs have shown that they are likely to prevail on their claim that Defendants violated Section 605(a), by assisting their members in the unauthorized receipt and decryption of DISH's satellite transmissions.  See Satfta, 2011 WL 856268, at * 5.

Courts have held that piracy software files, designed to assist in the unauthorized interception of satellite programming, constitute a "device" or "equipment" within the meaning of Section 605(e)(4).  See Dish Network, LLC v. Whitehead, 2011 WL 6181732, at * 4-5 (M.D. Fla. Dec. 13, 2011).  There is ample evidence that Defendants have distributed piracy software through their MFN website, and that the sole purpose of the software was to assist in the unauthorized decryption of DISH's satellite cable programming.

### 3. Electronic Communications Privacy Act

Plaintiffs' sixth cause of action alleges that Defendants violated the Electronic Communications Privacy Act, 18 U.S.C. § 2511(1)(a). Under Section 2511(1)(1), any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication," shall be subject to punishment as provided in subsection (4), or shall be subject to suit as provided in subsection (5).  Section 2520 provides for a private right of action.

Satellite signals are "electronic communications," and the interception of such signals constitute a violation of Section 2511.  See United States v. Lande, 968 F.2d 970 (9th Cir. 1992) (holding that defendant who modified descrambler units to enable home satellite dish owners to view scrambled pay television programming without payment violated Section 2511).   The evidence before the Court indicates that Defendants intentionally intercepted or assisted others in intercepting DISH's satellite transmissions. Therefore, Defendants have shown a likelihood of success on this claim.

B. Other Preliminary Injunction Factors

Plaintiff have established that they will suffer irreparable harm in the absence of injunctive relief.  Defendants are assisting numerous users to engage in piracy and obtain unlimited access to DISH programming, including premium and pay-per-view channels. (Duval Decl. ¶ 19.)  The piracy results in lost revenue to DISH, who sells the subscriptions, as well as NagraStar and EchoStar, who sell receivers, smart cards, and related technology to legitimate DISH subscribers. (Id.)  Furthermore, piracy harms the reputation of Plaintiffs, which is built on the delivery of secured content.  (Id. at ¶ 18.)  It would be very difficult to quantify Plaintiffs' lost revenue and reputational damage and make Plaintiffs whole.

The balance of hardships tips sharply in favor of DISH.  As long as Defendants operate their websites designed to help others circumvent DISH's security system and obtain free television programming, DISH continues to suffer monetary and reputational harm. There is no evidence that Defendants websites have any legitimate purpose.  Defendants have shown that they have no regard for the law by relaunching their website on myfreeneeds.net after the Court issued the TRO.  Defendants have flaunted the Court's order and have made it clear that they will continue their illegal activities until they are caught.

Finally, the public has a strong interest in the enforcement of anti-piracy legislation. See Whitcomb, 2011 WL 1559825, at * 4.

## III. CONCLUSION

For the reasons discussed above, Defendant's motion for preliminary injunction is **GRANTED**.

It is hereby **ORDERED** that, pending a further order of the Court, Defendants and any of their officers, agents, servants, employees, and those acting in active concert or participation with them who receive actual notice of this Order are **PRELIMINARILY ENJOINED** and **MUST RESTRAIN** from directly or indirectly:

    (a)    manufacturing, importing, offering to the public, providing, linking to, or

otherwise trafficking in (i) pirate software; and (ii) any other device or service used in circumventing DISH Network's security system or intercepting DISH Network programming;

      (b)    receiving or assisting others to receive DISH Network's satellite signal or other electronic communications originating from DISH Network's system without authorization;

      (c)    destroying, hiding, or altering any books or records, whether in hard copy or electronic form, regarding satellite television websites or domains, businesses, or finances of Defendants, including registration profiles of forum members, Internet Protocol logs, discussion threads, invoices, purchase orders, receipts, shipping records, banking or investment records, or any documents that identify manufacturers, exporters, importers, dealers, purchasers, or website owners and operators of the devices identified in subsection (a) above, or persons involved in operating any Internet Key Sharing ("IKS") server or receiving control words from same.

**IT IS FURTHER ORDERED** that this Order applies to the MFN domains and all other domain names used by Defendant, regardless of top-level domain, to traffic in pirate software.

**IT IS FURTHER ORDERED** that Defendants, the registrars of the MFN domains and their affiliates, and the registries of the MFN domains and their affiliates, including Verisign, Inc., and all others who receive notice of this Order, shall not transfer ownership of the MFN domains during the pendency of this action, except as directed herein, until further order of this Court.

**IT IS FURTHER ORDERED** that Defendants, the registrars of the MFN domains and their affiliates, and the registries of the MFN domains and their affiliates, including Verisign, Inc., and all others who receive notice of this Order, shall within 24 hours of receipt of this Order, change the registrar of record for the MFN domains to a holding account with GoDaddy.com, Inc. provided by Plaintiffs at Plaintiffs' expense.  Upon such transfer of the MFN domains into the holding account, GoDaddy.com, Inc. will lock the MFN domains, disable resolution of the MFN domains into any websites, take the MFN domains offline, and

hold the MFN domains in trust for the Court during the pendency of this action.

After GoDaddy.com, Inc. has effected this change, Defendants, registrars, registries, and all others who receive notice of this Order, are ordered to keep the MFN domains frozen and placed on lock status to prevent the MFN domains from being modified, sold, transferred to another owner, or deleted, until further order of this Court.  This process shall effectively seize and impound the MFN domains so that their contents, including the availability of pirate software files, are no longer accessible on the Internet, until further order of this Court.

**IT IS FURTHER ORDERED** that Plaintiffs and/or GoDaddy.com, Inc. may cancel or reverse any redirect of the MFN domains to another domain name caused by Defendants, thereby evading the provisions of this Order.

**IT IS FURTHER ORDERED** that all website hosting, website optimization, and any other company or person that provides website services for the MFN domains, including without limitation, CloudFlare, Inc., shall within 24 hours of receipt of this Order, cease all website services made in connection with the MFN domains.

**IT IS FURTHER ORDERED** that Defendants, the registrars of the MFN domains and their affiliates, and the registries of the MFN domains and their affiliates, including Verisign, Inc., website hosting companies, website optimization companies, including without limitation, CloudFlare, Inc., and all others who receive notice of this Order, shall preserve and not destroy any records, including electronic records and electronically stored information relating to: (i) the MFN domains; (ii) the owners and/or operators of the MFN domains; (iii) website services relating to the MFN domains; and (iv) the website contents related to the MFN domains, and shall take all steps necessary to retrieve electronic records relating to the MFN domains that may have been deleted before the entry of this Order;

**IT IS FURTHER ORDERED** that DISH Network shall provide electronic notice via substituted service via email, by serving a copy of all pleadings and other documents on file in this case, including this Order, on Defendants via email to the known email addresses associated with Defendants as follows:

milesforums@hotmail.com;

complaints@key-systems.net;

contact@privacyprotect.org;

compliance@publicdomainregistry.com.

**IT IS FURTHER ORDERED** the bond amount shall be set to zero dollars in entering this preliminary injunction, and that the $100,000 bond previously submitted by Plaintiffs, is hereby released by the Court.

**IT IS FURTHER ORDERED** this preliminary injunction shall remain in effect until further order of the Court.

Defendants are warned that any act by them in violation of any of the terms of this Order after proper notice to them may be considered and prosecuted as contempt of this Court.

**IT IS SO ORDERED.**

DATED:  February 3, 2012

BARRY TED MOSKOWITZ, Chief Judge
United States District Court